# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JAMES T. McDONALD and CAROL M.
McDONALD, husband and wife,

        Plaintiffs,

v.                                                                                                                                No. CIV 02-787 BB/RHS

ROBERT B. SHILLINGSTAD, M.D.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court for consideration of a motion for partial summary judgment (Doc. 78) filed by Defendant. The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the motion will be denied.

      This is a medical malpractice case brought solely against Defendant, although Plaintiff James McDonald ("James") was initially seen by Dr. Douglas McPherson. At the time of this initial visit, Defendant was a shareholder and corporate officer of a medical clinic in Alamogordo, and Dr. McPherson was an employee of that clinic. Dr. McPherson was in charge of the urgent care portion of the clinic. Plaintiffs seek to impose vicarious liability upon Defendant, for the acts or omissions of Dr. McPherson during his examination of James' injured foot on August 11, 2000. Plaintiffs also seek to impose liability on Defendant under the theory of negligent supervision. Defendant has moved for partial summary judgment on Counts II and III of Plaintiffs' amended complaint, asking to remove from this case any issue concerning Defendant's liability for Dr. McPherson's acts or omissions.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.*

**Discussion**

**Vicarious Liability:** Defendant has raised a number of arguments in opposition to Plaintiffs' vicarious-liability claim, including the following: (1) there was no employer-employee relationship between Defendant and Dr. McPherson; (2) Defendant did not have a right of control or supervision over Dr. McPherson, so New Mexico U.J.I. 13-1114 does not apply; (3) there was no physician-patient relationship between Defendant and James on August 11, 2000, so Defendant cannot be liable for anything that occurred on that date; and (4) there is no basis to pierce the corporate veil in this case. Plaintiffs did not address the arguments concerning the employer-employee relationship or the corporate veil, and the Court therefore determines these arguments are not being advanced by Plaintiffs in support of their vicarious-liability claim. *Cf. Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (plaintiff's negligence claim deemed abandoned because not delineated in brief in opposition to summary judgment or brief on appeal).

Plaintiffs do contend there are issues of fact as to whether U.J.I. 13-1114 applies in this case.[1] As the parties have stated, U.J.I. 13-1114 provides the analysis for deciding whether a doctor in New Mexico is vicariously liable for the negligence of another doctor. Under the U.J.I., the two requirements for imposing such liability are: (a) the doctor has the right to control the manner in which the details of the particular activity giving rise to the injury are performed, and (b) the particular activity giving rise to the injury was performed under the immediate and direct supervision of the doctor.

In support of their contention that these requirements have been satisfied, Plaintiffs have presented the following evidence (viewed in the light most favorable to Plaintiffs, and ignoring the contrary evidence presented by Defendant): (1) James had been specifically referred to see Defendant, and was not simply a walk-in patient at the clinic's urgent care center; (2) Dr. McPherson knew this, and considered himself to be examining James on behalf of Defendant, which was something he did occasionally [McPherson dep. pp. 19, 52, 54, unnumbered Exh. 2, MSJ]; (3) Because Dr. McPherson knew James had been referred to see Defendant, he left the examining room and consulted with Defendant for approximately five minutes [*Id.*, pp. 50-51, 54]; (4) It was Dr. McPherson's understanding that Defendant would take over the care of James after this initial exam [*Id.*, p. 52]; (5) Dr. McPherson's intention was to see James on behalf of Defendant, and then refer him to Defendant for further care if needed [*Id.,* p. 55]; (6) when Dr. McPherson left the examining room to consult with Defendant, James heard him say, "I gotta talk to Shillingstad about this." [James

---

[1]Plaintiffs did not argue this question in their response brief to the motion for partial summary judgment; however, in that brief Plaintiffs incorporated by reference their reply brief in support of their motion to amend the complaint. The reply brief (Doc. 36) does argue the applicability of U.J.I. 13-1114. In the future, the Court would prefer that the incorporated argument at least be summarized in the subsequent brief, so it is clear what is still being argued and what portion, if any, of the incorporated brief may not be relevant to the matter currently being briefed.

dep. p. 63, unnumbered Exh. 3, MSJ]; (7) When Dr. McPherson returned to the examining room, both James and Plaintiff Carol McDonald ("Carol") heard him say that Defendant had said James should be given more, or different, antibiotics, as well as a blood thinner [James dep. p. 63, *id.*; Carol dep. p. 48, Exh. 1, Resp. to MSJ];[2] (8) Dr. McPherson stated that he "probably" would have complied with a request from Defendant that he perform further tests or a more thorough examination [McPherson dep. p. 52, unnumbered Exh. 2, MSJ]; and (9) Dr. McPherson testified that Defendant wanted to see James as an appointment, and James was therefore referred to see Defendant on August 15 [*Id.* p. 29, Exh. 5, Resp. to MSJ].

It is true that Defendant presented evidence to the effect that he had no right to control Dr. McPherson's treatment of patients, Dr. McPherson acted independently as a physician and made his own decisions on August 11, 2000, and his consultation with Defendant was merely a "consult-type" situation. However, this evidence is not sufficient for summary judgment purposes, as it contradicts the evidence most favorable to Plaintiffs. Considering only the evidence recited in the previous paragraph, a reasonable jury could conclude that Dr. McPherson considered James to be Defendant's patient, not his; that he consulted with Defendant for that reason; that he was acting on behalf of Defendant and therefore would have followed Defendant's instructions as to diagnosis or treatment

---

[2]This evidence, despite its possible double-hearsay nature, is admissible because each level of the hearsay is subject to an exception to the hearsay rule. Defendant's alleged statement to Dr. McPherson, prescribing a particular form of treatment for James' foot, is an admission of a party-opponent and admissible as non-hearsay under Federal Rule of Evidence 801(d)(2). In turn, Dr. McPherson's relaying of this statement to James and Carol was, if Plaintiffs' evidence is believed, a statement by an agent of Defendant, within the scope of that agency, and admissible under Rule 801(d)(2)(D). *See, e.g., Moore v. Kuka Welding Systems*, 171 F.3d 1073, 1081 (6th Cir. 1999) (affirming admission of double-hearsay statements where one level was an admission of a party and the other a statement by an agent of that party); *see also Vasquez v. Lopez-Rosario*, 134 F.3d 28, 35 (1st Cir. 1998) (district court should have admitted double-hearsay statements where each link in the chain qualified as non-hearsay, as admission of party and statement by agent of party).

of James on August 11; and that the appropriate treatment for James' foot was decided by Defendant, either in whole or in part. Thus, questions of fact exist as to whether Defendant had the right to control Dr. McPherson's examination and treatment of James on August 11, and whether he exercised that control by directing Dr. McPherson to prescribe a certain type of treatment. In sum, even if Dr. McPherson in general exercised independent medical judgment and was not subject to Defendant's supervision and control, Plaintiffs are entitled to have a fact-finder consider whether, in this particular instance, Dr. McPherson was in fact subjecting his diagnostic and treatment decisions to review and control by Defendant. Plaintiffs' vicarious-liability claim, based on U.J.I. 13-1114, will be allowed to go to trial.

**Existence of Physician-Patient Relationship:** Defendant argues there was no physician-patient relationship between James and him on August 11, 2000. It is not clear that the lack of such a relationship would allow Defendant to avoid vicarious liability under U.J.I. 13-1114, which does not on its face require such a relationship as a basis for liability. However, the existence of a physician-patient relationship is relevant to the issue of whether Defendant owed James a duty on August 11, which in turn is relevant to the negligent-supervision question discussed below. Therefore, the Court will address the matter.

Defendant contends the consultation between Dr. McPherson and Defendant on August 11 was no more than an informal consultation, and such consultations do not give rise to a physician-patient relationship. There is substantial case law on this issue, and the Court agrees that an informal consultation between doctors, standing alone, is not sufficient to create a physician-patient relationship. *See, e.g., Hill v. Kokosky*, 463 N.W.2d 265, 266-68 (Mich. App. 1990) (physician-patient relationship does not arise from treating physician's solicitation of a colleague's informal opinion on patient treatment). In this case, however, if Plaintiffs' evidence is believed, the

5

consultation between Dr. McPherson and Defendant was not merely an informal solicitation of Defendant's opinion. Instead, there is evidence that Dr. McPherson consulted Defendant because he believed James was Defendant's patient, and followed Defendant's instructions as to what treatment to prescribe for James' foot. In circumstances like this, where the physician being consulted actually prescribes treatment for the patient rather than simply providing an informal opinion, courts have been virtually unanimous in finding that a physician-patient relationship existed. *See, e.g., Lownsbury v. VanBuren*, 762 N.E.2d 354, 362 (Ohio 2002) (physician can consent to creation of physician-patient relationship by, *inter alia*, prescribing treatment for the patient); *Diggs v. Arizona Cardiologists, Ltd.*, 8 P.3d 386, 390 (Az. App. 2000) (duty toward patient arose where cardiologist recommended treatment for patient and ordered her to follow up with him in ten days); *Corbet v. McKinney*, 980 S.W.2d 166, 169 (Mo. App. 1998) (liability of a physician who is consulted on a case generally depends on whether the physician undertakes to examine, diagnose, or treat the patient); *Bovara v. St. Francis Hosp.*, 700 N.E.2d 143, 147 (Ill. App. 1998) (agreeing with cases that have found a physician-patient relationship where consulted doctors performed a service for the patient's benefit); *Oja v. Kin*, 581 N.W.2d 739, 743 (Mich. App. 1998) (merely listening to another doctor's description of patient's problem, and offering professional opinion regarding treatment, is not enough; however, where consulted doctor essentially directs the course of the patient's treatment, a physician-patient relationship has been created). The Court therefore finds an issue of fact has been raised as to whether a physician-patient relationship was created between Defendant and James on August 11, 2000.

**Negligent Supervision:** Defendant has made two arguments in opposition to Plaintiffs' claim of negligent supervision. First, Defendant argues as a matter of law that New Mexico would not recognize a negligent supervision claim against a fellow employee of a corporation, as opposed to

the employer corporation. Second, Defendant argues he had no duty toward James on August 11, and therefore, since negligent supervision is a tort and a duty must be present to impose liability for a tort, the negligent supervision claim is without merit.[3] The Court does not agree with either argument.

Defendant points out that in New Mexico, negligent supervision claims are "typically brought against employers, not employees." [Brief in sup. of MSJ, p. 15]  In this case, however, Defendant was not simply a co-employee of a corporation; he was an officer and shareholder of the corporation. New Mexico courts have recognized the general proposition that an officer of a corporation may be held personally liable for torts committed by the corporation, if the officer was personally involved in the commission of the tort. *Stinson v. Berry*, 123 N.M. 482, 486-87, 943 P.2d 129, 133-34 (Ct. App. 1997). Similarly, an officer of a corporation may be found liable for negligent supervision of a subordinate employee of the corporation, if the officer is personally involved in supervising the employee or has a responsibility to be so involved. 3A *Fletcher Cyclopedia Corp.* § 1137.9, p. 219 (2002); *Keams v. Tempe Technical Inst., Inc.*, 993 F.Supp. 714, 725 (D.Ariz. 1997).  The Court therefore cannot hold as a matter of law that Defendant could not be liable for negligent supervision of Dr. McPherson, since Plaintiffs may be able to prove Defendant was personally involved in supervising Dr. McPherson's examination and treatment of James on August 11.

As to the issue of duty, the Court has already held above that fact questions exist as to whether a physician-patient relationship was created on August 11 between Defendant and James.

---

[3]Defendant did not argue that the elements of a negligent supervision tort have not been met under the facts adduced so far in discovery. The Court therefore does not address the issue of whether, as a factual matter, Plaintiffs will be able to state a claim of negligent supervision. For example, the Court will not attempt to determine at this point whether Defendant was in fact involved in supervising Dr. McPherson on August 11.

7

If such a relationship was created, Defendant did have a duty toward James. Therefore, summary judgment is not appropriate on the duty question.

**Other Theories Raised by Plaintiffs:** Plaintiffs have argued that Defendant is liable for Dr. McPherson's actions under the doctrines of ostensible agency and agency by estoppel. Since the Court is allowing the vicarious-liability claim to proceed, it is not necessary to address these theories. However, the Court does note it is not clear whether the facts of this case support application of these theories, as they are discussed in *Houghland v. Grant*, 119 N.M. 422, 891 P.2d 563 (Ct. App. 1995). The Court will closely examine the evidence presented at trial to determine whether to instruct the jury on either or both of these theories.

**Conclusion**

Based on the foregoing, the Court finds there are genuine issues of material fact as to whether Defendant may be found vicariously liable for Dr. McPherson's actions on August 11, 2000. In addition, Plaintiffs' negligent supervision claim is not subject to dismissal as a matter of law. Therefore, summary judgment will be denied as to both Count II and Count III of the amended complaint.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendant's motion for partial summary judgment (Doc. 78) be, and hereby is, DENIED.

Dated this 25th day of August, 2003.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
John R. Polk
James K. Gilman

**For Defendant**:
Leonard J. Piazza
Anita X. Tellez